IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LAURA LYNN PARKER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Civil Action No. 08-218 |
| ) | |
| MIDWEST AIR TRAFFIC CONTROL, ) | |
| ) | |
| Defendant. ) | |

AMBROSE, Chief District Judge

**OPINION
and
ORDER OF COURT**

**SYNOPSIS**

Plaintiff, Laura Lynn Parker, asserts claims of employment discrimination arising under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e, *et seq.,* and the Americans with Disabilities Act of 1990, 42 U.S.C. §12101, *et seq.,* against her former employer, Defendant, Midwest Air Traffic Control ("Midwest"). (Docket No. 19). Defendant has filed a Motion for Summary Judgment. (Docket No. 43). After careful consideration of the Motion and related filings and based on my opinion set forth below, Defendant's Motion for Summary Judgment (Docket No. 43) is granted.

**OPINION
AND
ORDER OF COURT**

**I.  BACKGROUND**[1]

Since January 1, 2005, Defendant, Midwest, provides air traffic control services at the Arnold Palmer Regional Airport in Latrobe, Pennsylvania ("Latrobe"). Plaintiff was employed by Defendant as an air traffic controller from January 1, 2005 through October 31, 2005. Plaintiff was

---

[1]These facts are admitted facts taken from the parties statements of material facts. (Docket Nos. 46, 52, and 58).

terminated from employment with Defendant on October 31, 2005.

The reason the air traffic control position at Latrobe exists is to control air traffic. To control air traffic at Latrobe, each controller is required to hold a Control Tower Operator ("CTO") Certificate which is a license issued by the Federal Aviation Administration ("FAA") and enables the holder to control air traffic at the airports listed on the CTO Certificate. A current, valid Class II Medical Certificate ("Class II") is required to maintain the CTO Certificate. FAA regulators require all air traffic controllers to hold a current, valid Class II whenever controlling air traffic. A CTO Certificate is a job requirement of an air traffic controller at Latrobe. A person cannot work as an air traffic controller at Latrobe without a Class II.

Plaintiff had a Class II while employed with Defendant until October 31, 2005. At her medical examination on October 24, 2005, Plaintiff informed the FAA flight surgeon of her diagnosis of insulin dependent diabetes mellitus Type 1. Following the October 24, 2005, examination, Plaintiff was not reissued a Class II Certificate by the FAA. Plaintiff could not get a Class II until she received a waiver/special consideration from the FAA. Plaintiff discussed with Greg Retallick, Defendant's air traffic manager at Latrobe, that she failed the Class II. Retallick reported to Bruce Murr, Defendant's air traffic services manager for Area 1, that Plaintiff failed the Class II. Murr reported to Bill Ellis, vice president of aviation services, that Plaintiff lost the Class II. By letter dated October 28, 2005, from Ellis to Plaintiff, Defendant terminated Plaintiff effective October 31, 2005, because she no longer held a current, valid Class II.

Plaintiff initiated this law suit against Defendant asserting claims of employment discrimination arising under Title VII and the ADA. (Docket Nos. 1 and 19). Defendant has filed a Motion for Summary Judgment as to all claims. (Docket No. 43). The issues are now ripe for review.

## II. LEGAL ANALYSIS

### A. Standard of Review

Summary judgment may only be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against the party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In considering a motion for summary judgment, this Court must examine the facts in a light most favorable to the party opposing the motion. *International Raw Materials, Ltd. v. Stauffer Chemical Co.,* 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence creates no genuine issue of material fact. *Chipollini v. Spencer Gifts, Inc.*, 814 F.2d 893, 896 (3d Cir. 1987). The dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A fact is material when it might affect the outcome of the suit under the governing law. *Id.*

Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. *Celotex,* 477 U.S. at 322. Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. *Id.* at 324. Summary judgment must therefore be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case,

and on which that party will bear the burden of proof at trial." *White v. Westinghouse Electric Co.*, 862 F.2d 56, 59 (3d Cir. 1988), *quoting Celotex*, 477 U.S. at 322.

**B.     The ADA**

Count I of Plaintiff's Amended Complaint is a claim brought pursuant to the ADA. (Docket No. 19). "Congress enacted the ADA in 1990 as an effort to prevent otherwise qualified individuals from being discriminated against in employment based on a disability." *Gaul v. Lucent Technologies, Inc.*, 134 F.3d 576, 579 (3d Cir. 1998), *see*, 29 C.F.R. §1630. Pursuant to the ADA, an employer is prohibited from discriminating "against a qualified individual with a disability because of the disability of such individual with regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C § 12112(a). Discrimination encompasses not only "adverse actions motivated by prejudice and fear of disabilities, but also includes failing to make reasonable accommodations for a plaintiff's disabilities." *Taylor v. Phoenixville School District*, 184 F.3d 296, 306 (3d Cir. 1999). The ADA states that an employer discriminates against an employee when he "does not mak[e] reasonable accommodation to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship...." 42 U.S.C. § 12112(b)(5)(A).

In light of the standards imposed by the ADA, it is well-settled that for a plaintiff to establish a *prima facie* case of discrimination under the ADA, he/she has the burden of showing:

1.     He/She is a disabled person within the meaning of the ADA;

2.     He/She is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and

3.     He/She has suffered an otherwise adverse employment decision as a result of discrimination.

4

*Gaul,* 134 F.3d at 580, *citing Shiring v. Runyon*, 90 F.3d 827, 831 (3d Cir. 1996); *Deane v. Pocono Medical Center*, 142 F.3d 138, 142 (3d Cir. 1998). A failure to meet any one of these elements is fatal to Plaintiff's case.

The familiar burden shifting paradigm, established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 793-94 (1973), applies here. As a result, if the plaintiff makes out a *prima facie* showing of discrimination, the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for the adverse action. If the defendant meets this burden, the plaintiff must then offer evidence that the defendant's stated reason for the adverse action was pretextual. *Id.* at 802-04. To prove pretext, the plaintiff must "cast sufficient doubt upon each of the legitimate reasons proffered by the defendant so that a factfinder could reasonably conclude that each reason was a fabrication...or...allow the factfinder to infer that discrimination was more likely than not a motivating or determinative cause of the adverse employment action." *Fuentes v. Perskie,* 32 F.3d 759, 762 (3d Cir. 1994).

### 1. *Prima facie* case - Disability

To begin with, Defendants assert that Plaintiff cannot meet the first element of her *prima facie* case - that she is disabled within the meaning of the ADA. (Docket No. 46, pp. 18-19). To demonstrate that Plaintiff has a disability, she must prove that she:

(A) has a physical or mental impairment that substantially limits one or more of the major life activities of such individual;

(B) has a record of such an impairment; or

(C) is regarded as having such an impairment.

*Dean v. Pocono Med. Ctr.,* 142 F.3d 142, 143 (3d Cir. 1998), *citing* 42 U.S.C. § 12102(2); 29 C.F.R. §1630.2(g). In making the determination of whether an individual is "disabled," Defendant argues that the determination should be made with reference to measures that mitigate the individual's

impairment. (Docket No. 46, p. 18). Specifically, Defendant argues that Plaintiff is not disabled because her Type I diabetes is controlled by medication. (Docket No. 46, pp. 18-19). In support of this argument, Defendant cites to *Sutton v. United Air Lines, Inc.,* 527 U.S. 471 (1999).

> [I]f a person is taking measures to correct for, or mitigate, a physical or mental impairment, the effects of those measures-both positive and negative-must be taken into account when judging whether that person is "substantially limited" in a major life activity and thus "disabled" under the Act....To be sure, a person whose physical or mental impairment is corrected by mitigating measures still has an impairment, but if the impairment is corrected it does not "substantially limi[t]" a major life activity.

*Id.* at 482-83. This, however,

> "does not, by itself, relieve one's disability. Rather, one has a disability under subsection (A) if, notwithstanding the use of a corrective device, that individual is substantially limited in a major life activity. For example, individuals who use prosthetic limbs or wheelchairs may be mobile and capable of functioning in society but still be disabled because of a substantial limitation on their ability to walk or run. The same may be true of individuals who take medicine to lessen the symptoms of an impairment so that they can function but nevertheless remain substantially limited. Alternatively, one whose high blood pressure is "cured" by medication may be regarded as disabled by a covered entity, and thus disabled under subsection (C) of the definition. The use or nonuse of a corrective device does not determine whether an individual is disabled; that determination depends on whether the limitations an individual with an impairment actually faces are in fact substantially limiting."

*Id.* at 488.

Plaintiff must now demonstrate that there is a genuine issue that she is disabled within the meaning of the ADA. In opposition, however, Plaintiff's only argument is, essentially, that because *Sutton* was partially overruled by the recently enacted amendments to the ADA, effective January 1, 2009, mitigating measures can no longer be considered when determining whether an individual is disabled. (Docket No. 52, pp. 22-24, 27-28); *See* ADA Amendments Act of 2008 ("ADAAA"), Pub.L. 110-325, 122 Stat. 3553 (2008). The ADAAA substantially changes how employers and courts are to evaluate ADA claims. In part, Congress expressly rejected certain holdings of the Supreme Court in *Sutton, supra,* and *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184 (2002), which "narrowed the broad scope of protection intended to be afforded by the ADA, thus eliminating protection for many individuals whom Congress intended to protect" and caused "lower courts [to]

6

incorrectly [find] in individual cases that people with a range of substantially limiting impairments are not people with disabilities." Pub. L. No. 110-325, § 2(a)(4), (5), & (6). Of particular importance in this case is the amendment that sets forth the rules of construction regarding the definition of disability and states that "[t]he determination of whether an impairment substantially limits a major life activity shall be made *without* regard to the ameliorative effects of mitigating measures such as...medication." 42 U.S.C. §12102(4)(E)(i), effective January 1, 2009.[2]

Generally, a court applies the laws and interpretations that were in force when the complained-of acts occurred. *See, Landgraf v. USI Film Prods.*, 511 U.S. 244 (1994). A court should not retroactively apply legislation if it "would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Id.* at 280. A statute is not given retroactive effect "unless such construction is required by explicit language or by necessary implication." *Fernandez-Vargas v. Gonzales*, 548 U.S. 30 (2006). In the case of the ADAAA, the express language states that the amendments would not take effect until January 1, 2009. Pub. L. No. 110-325, § 8. Moreover, the ADAAA could increase

---

[2]The amendments specifically state as follows:

(E)(i) The determination of whether an impairment substantially limits a major life activity shall be made *without* regard to the ameliorative effects of mitigating measures such as–

    (I)    medication, medical supplies, equipment, or appliances, low-vision devices (which do not include ordinary eyeglasses or contact lenses), prosthetics including limbs and devices, hearing aids and cochlear implants or other implantable hearing devices, mobility devices, or oxygen therapy equipment and supplies;

    (II)    use of assistive technology;

    (III)    reasonable accommodations or auxiliary aids or services; or

    (IV)    learned behavioral adaptive neurological modifications.

42 U.S.C. §12102(4)(E)(i), effective January 1, 2009 (emphasis added).

Defendant's liability for its past conduct.  Finally, it appears that courts that have addressed this issue have concluded that the ADAAA cannot be applied retroactively to conduct that preceded its effective date. *See Kiesewetter v. Caterpillar, Inc.*, 295 Fed.Appx. 850, 851 (7th Cir.2008); *Moran v. Premier Educ. Group, LP*, 599 F.Supp.2d 263, 271-72 (D. Conn. 2009)*; Nyrop v. Independent School Dist. No. 11*, No. 07-4663, 2009 WL 961372, 3 n.2 (D. Minn. April 7, 2009)*; Ekstrand v. School Dist. of Somerset*, No. 08-cv-193-bbc, 2009 WL 564672, 7 (W.D. Wis. Mar. 3, 2009)*; Burkhart v. Intuit, Inc.,* No. CV-07-675-TUC-CKJ, 2009 WL 528603, 11 n. 4 (D. Ariz. Mar. 2, 2009)*; Supinski v. United Parcel Serv., Inc.*, No. 3:CV-06-0793, 2009 WL 113796, *5 n. 6 (M.D. Pa. Jan. 16, 2009); *Walstrom v. City of Altoona*, No. 3:2006-81, 2008 WL 5411091, *5 n. 3 (W.D. Pa. Dec. 29, 2008); *Hays v. Clark Prods., Inc.*, No. 1:07-CV-328, 2008 WL 5384300, *6 n. 3 (S.D. Ind. Dec. 18, 2008); *Levy ex rel. Levy v. Hustedt Chevrolet*, No. 05-4832(DRH)(MLO), 2008 WL 5273927, *3 n. 2 (E.D. N.Y. Dec. 17, 2008); *Knox v. City of Monroe*, No. 07-606, 2008 WL 5157913, *5 n. 10 (W.D. La. Dec. 9, 2008); *Gibbon v. City of New York*, No. 07-Civ-6698, 2008 WL 5068966, *5 n. 47 (S.D. N.Y. Nov. 25, 2008).  Thus, I decline to apply the ADAAA retroactively as requested by Plaintiff.  Therefore, the ADAAA is inapplicable and will not govern in this case.

Applying the same, Plaintiff has proffered no argument and pointed me to no evidence that when considering her diabetes while on her medication, she is disabled within any of the definitions under the ADA or that she is or believed to be substantially limited in a major life activity. (Docket No. 52, pp. 27-28).  In fact, according to Plaintiff, while she was on her medication, her diabetes was stabilized.  (Docket No. 46-2, pp. 109-111).  Thus, Plaintiff has failed to meet her *prima facie* case under the ADA.  Consequently, summary judgment as to Plaintiff's ADA claim is warranted on this basis.[3]

---

[3]Defendant makes additional arguments that Plaintiff is not qualified to perform the essential functions of the job, with or without reasonable accommodations, such that her ADA claim must fail. (Docket No. 46, pp. 16-24).  Since I have found that Plaintiff has failed to meet the first prong of her *prima facie* case, I need not discuss these other arguments.

## C. Title VII - Gender Discrimination

In Title VII gender discrimination cases, I apply the well-established burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). First, the plaintiff has the burden of proving by a preponderance of the evidence a *prima facie* case of gender discrimination. To do that, she must demonstrate that (a) she was a member of a protected class, (b) she was qualified for the position from which she was discharged, and (c) another, not in the protected class, was treated more favorably. *See id*. at 802-03; *Hugh v. Butler County Family YMCA,* 418 F.3d 265, 267 (3d Cir. 2005).

If the plaintiff succeeds in proving the *prima facie* case, the burden shifts to the defendant to articulate some legitimate, non-discriminatory reason for adverse employment action. In pretext discrimination cases, when the burden shifts to defendant, "the employer need not prove that the tendered reason actually motivated its behavior, as throughout this burden-shifting paradigm the ultimate burden of proving intentional discrimination always rests with the plaintiff." *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994).

If the defendant carries this burden, the plaintiff must then prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not the true reasons, but were a pretext for discrimination. *See, Texas Dept. Of Community Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981). To rebut the defendant's legitimate reason for its conduct, Plaintiff must provide sufficient evidence from which a factfinder could reasonably reject Defendant's explanation, or believe that an invidious discriminatory reason was more likely than not a motivating cause of the employer's decision. *Fuentes*, 32 F.3d at 763-64. Specifically, Plaintiff must "demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered [sic] legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence." *Id.* "In simpler terms, the plaintiff must show, not merely that the

employer's proffered reason was wrong, but that it was so plainly wrong that it cannot have been the employer's real reason." *Keller v. Orix Credit Alliance*, 130 F.3d 1101, 1111 (3d Cir. 1997).

Defendant first argues that Plaintiff's gender discrimination claim should be dismissed since she fails to meet her *prima facie* case that she was qualified for the job from which she was discharged. After a review of the evidence, I agree.

The parties agree to the following facts:[4] To control traffic at Latrobe, each controller is required to hold a Control Tower Operator certificate ("CTO") which is a license issued by the FAA and enables the holder to control air traffic at the airport(s) listed on the CTO certificate. A current, valid Class II Medical Certificate ("Class II") is required to maintain the CTO certificate. FAA regulations require all air traffic controllers to hold a current, valid Class II whenever controlling air traffic. A CTO certificate is a job requirement and, thus, Plaintiff cannot work as an air traffic controller at Latrobe without the Class II.

Plaintiff "does not dispute that the holding of a Class II Medical Certificate is a job requirement for air traffic controllers." (Docket No. 52, pp. 25-26). There is no dispute that at the time of her dismissal, Plaintiff did not hold a Class II Medical Certificate. There is also no genuine issue of material fact that the Federal Aviation Administration ("FAA"), and not Defendant, controls and issues Class II Medical Certificates and waivers. (Docket No. 46-2, p. 4, ¶18). While I accept as true that Plaintiff started to apply for a waiver, this evidence is irrelevant because there is no genuine issue that she did not obtain a waiver at the time of her dismissal on October 31, 2005. In fact, there is no evidence that Plaintiff has held a Class II certificate after that date. As a result, Plaintiff did not possess the prerequisites for the job of air traffic controller.

In opposition, Plaintiff simply concludes that she was qualified to perform the job from which she was discharged. (Docket No. 52, p. 34). I believe her argument is that she had the educational

---

[4]These facts come from admitted statements of fact.

10

and background experience to perform the job. (Docket No. 52, p. ). It is axiomatic, however, that to be qualified for a particular position, the person must satisfy all of the prerequisites for the position, including the appropriate licenses and certificates. *Brummett v. Lee Enterprises, Inc.*, 284 F.3d 742, 745 (7th Cir. 2002)(An employee without valid driver's license, a requirement of his job, failed to establish prima facie Title VII case, even if he eventually received driver's permit which would have permitted him to drive on job under limited circumstances, where, at time of his termination, his license had been suspended for minimum of six months); *Flagg v. Control Data,* 806 F.Supp. 1218, 1223 (E.D.Pa. 1992). Again, Plaintiff "does not dispute that the holding of a Class II Medical Certificate is a job requirement for air traffic controllers." (Docket No. 52, pp. 25-26). There is no doubt that she did not hold a current Class II Medical Certificate at the time of her termination. In fact, Plaintiff herself testified that she could not perform her job without a valid Class II. (Docket No. 46-2, p. 13). Therefore, there is no genuine issue that Plaintiff was not qualified to perform the job of air traffic controller.

Thus, Plaintiff has failed to meet her *prima facie* case to showing that she was qualified for the job from which she was discharged. Consequently, summary judgment is warranted in favor of Defendant on Plaintiff's Title VII claim.

Even if I did find that Plaintiff was qualified for the air traffic controller position, summary judgment is still warranted as to Plaintiff's Title VII gender discrimination claim because Plaintiff has failed to provide evidence that "nonmembers of the protected class were treated more favorably." *McDonnell Douglas Corp.*, 411 U.S. at 802-03. The only mention of another person by Plaintiff is Bob Navitski, who she speculates was permitted to leave work early once without repercussions. (Docket No. 52, . 12, ¶62). Plaintiff does not cite to any evidence of record that shows the conditions under which Navitski left. *Id.* Moreover, Plaintiff testified that she was permitted to leave work early without repercussions, as well. (Docket No. 46-2, p. 24). Consequently, other than pure conjecture, there is no evidence that "nonmembers of the protected class were treated more

favorably." Thus, Plaintiff has failed to prove her Title VII *prima facie* case and summary judgment is warranted.[5]

---

[5]To cover all bases, Defendant makes one final argument that Plaintiff's hostile work environment claims must fail. (Docket No. 46, pp. 26-28). A review of the Amended Complaint (Docket No. 19) and Plaintiff's entire response to the Motion for Summary Judgment and related documents reveals that Plaintiff is not pursing a hostile work environment claim. No where in the Amended Complaint does Plaintiff refer to a hostile work environment. *See,* Amended Complaint. In fact, Plaintiff does not even mention a hostile work environment claim in her opposition to the Motion for Summary Judgment or analyze her case under the standard for evaluating the same which was set forth in *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1482 (3d Cir. 1990). *See,* Docket No. 52. Consequently, I find that Plaintiff is not proceeding under this theory and, thus, I need not address the same.

Nonetheless, if Plaintiff was proceeding upon a hostile work environment claim, I would find that summary judgment would be appropriate. To assert a *prima facie* case of hostile work environment, a plaintiff must prove: (1) the employees suffered intentional discrimination because of their sex; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same sex in that position; and (5) the existence of respondeat superior liability. *Andrews, supra.* In this case, Plaintiff has failed to cite any evidence of "pervasive and regular" discrimination, let alone evidence that creates an environment "severe enough to affect the psychological stability of a minority employee," both subjectively and objectively. *Id.*

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LAURA LYNN PARKER, | ) |
| Plaintiff, | ) |
| vs. | ) Civil Action No. 08-218 |
| MIDWEST AIR TRAFFIC CONTROL, | ) |
| Defendant. | ) |

AMBROSE, Chief District Judge

### ORDER OF COURT

AND NOW, this 12th day of May, 2009, after careful consideration Defendant's Motion for Summary Judgment (Docket No. 43), said Motion is granted.

The case shall be marked "CLOSED."

BY THE COURT:

/s/ Donetta W. Ambrose
Donetta W. Ambrose
Chief U.S. District Judge